IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.  5:11-CR-52 |
| | ) | |
| v. | ) | Judge Lesley Wells |
| | ) | |
| JEFF BOYD LEVENDERIS, | ) | GOVERNMENT'S MOTION FOR |
| | ) | COURT-ORDERED HAIR |
| Defendant. | ) | SAMPLES |

Now comes the United States of America, by and through its counsel Steven M.

Dettelbach, United States Attorney for the Northern District of Ohio, and Justin E. Herdman and

Thomas E. Getz, Assistant United States Attorneys, and respectfully requests that this Court

grant this motion to collect hair samples from Jeff Boyd Levenderis (hereinafter, "the

Defendant.")   As outlined below, there exists adequate factual support indicating that from hair

samples of the Defendant, evidence of the violations charged in the Indictment in the above-

captioned case will be recovered.

## **INTRODUCTION**

On January 28, 2011, the Defendant was arrested pursuant to an arrest warrant, supported

by a sworn affidavit and criminal complaint, for possessing the biological toxin ricin, in violation

of 18 U.S.C. § 175(b).  On February 1, 2011, an indictment was returned charging the Defendant with possessing the biological toxin ricin, in violation of 18 U.S.C. § 175(b), and making false statements to Special Agents of the Federal Bureau of Investigation (hereinafter, "FBI"), in violation of 18 U.S.C. § 1001(a)(2).

## FACTS SUPPORTING COLLECTION OF HAIR SAMPLE

The factual allegations of both charging documents rest upon the same set of common occurrences – briefly, that the Defendant first manufactured and then possessed, for some extended period of time, three vials containing the biological toxin ricin.  These three vials were contained inside a coffee canister, which had been placed inside the freezer portion of a refrigerator in a residence formerly owned by the Defendant.  Upon being confronted with the substance (but prior to scientific testing on the subject), the Defendant told FBI agents that the substance was definitively not ricin and was, instead, homemade ant poison.  After a few days, when testing revealed that the substance was, in fact, ricin, the Defendant admitted to FBI agents that the substance was ricin and detailed the meticulous steps necessary to produce the toxin, including precautions the Defendant took to avoid death or serious injury.  The Defendant stated that he had produced this ricin at some point in approximately 2000 or 2001.

As detailed in the "Report of Examination" dated May 20, 2011 from the FBI Laboratory in Quantico, Virginia, (attached hereto as Exhibit A), one hair was recovered from inside the coffee canister and one hair from inside the vial labeled Q3, which was inside the coffee canister and also contained a powder.  This powder tested positive for active ricin, as set forth in the "Report of Examination" dated March 8, 2011 from the FBI Laboratory, which incorporates findings from the National Bioforensic Analysis Center (NBFAC) (attached hereto as Exhibit B).

2

Both of the hairs recovered by the FBI exhibited characteristics consistent with facial hairs from a Caucasian individual.  The Defendant, who is Caucasian, has also consistently maintained a short beard and other facial hair since approximately 1995, as evidenced by photographs maintained by the Ohio Bureau of Motor Vehicles (attached hereto as Exhibit C).

Thus, based on the Defendant's statements and the recovery of facial hair by the FBI, there is a substantial likelihood that the hair recovered from inside a vial containing active ricin powder is the Defendant's.  A hair sample collected from the Defendant would enable the FBI Laboratory to conduct further testing in order to determine whether the Defendant is a possible source of the facial hair recovered from inside the coffee canister and vial containing ricin.

## PROPOSED COLLECTION PROCEDURE

The proposed collection of hair samples in this case does not seek "plucking" of any hairs, as the recovered evidence at the FBI Laboratory did not contain any hair root.  Instead, the proposed collection procedure involves either the "snipping" or "combing" of several hairs from the Defendant's head and face.  These collected hair samples will then be compared against the recovered hairs to identify any similarity of physical characteristics, such as those set out at page 2 of Exhibit A.

## APPLICABLE LEGAL PRINCIPLES

The legal precedent for collection of biological samples from a criminal defendant stems from a more invasive procedure – the compelled collection of a blood sample – which"plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment." *Schmerber v. California*, 384 U.S. 757, 767 (1966).  *Schmerber* recognized that the "ordinary requirements of the Fourth Amendment [such as the existence of probable cause] would be the

threshold requirements for conducting" the kind of surgical search and seizure implicated by the extraction of blood. *Winston v. Lee*, 470 U.S. 753, 759-60 (1985).  In addition, *Schmerber* – which involved blood extraction, a procedure clearly more intrusive than the procedures proposed by the government here – "considered a number of other factors in determining . . . 'reasonableness,'" including the "extent to which the medical procedure may threaten the safety or health of the individual" and the "extent of the intrusion upon the individual's dignitary interests in personal privacy and bodily integrity." *Id*. at 761.  *Schmerber* noted that the blood procedure in that case was "commonplace in these days of periodic physical examination" and that "for most people the procedure involves virtually no risk, trauma, or pain." 384 U.S. at 771.

The principle outlined in *Schmerber* has not necessarily been extended to afford Fourth Amendment protections over the collection of biological samples – such as hair – that the human body tends to shed naturally.  Notably, the collection of hair samples by snipping or combing is not invasive at all – indeed, the collection of such a hair sample is a mere acceleration of the biological process which leads to the formation of hair, which is predicated on the eventual discarding of the hair by the body (and results in the consequent evidentiary presence of hair at certain crime scenes).

There are very few reported federal cases that have directly addressed the question whether the Fourth Amendment applies to the collection of a hair sample. The only appellate decision is *In re Grand Jury Proceedings (Mills)*, 686 F.2d 135 (3d Cir. 1982), which examined the issue in the context of a federal grand jury subpoena seeking production of hair samples. There, the Third Circuit "conclude[d] that there is no greater expectation of privacy with respect to hair which is on public display than with respect to voice, handwriting or fingerprints." *Id.* at

4

139. "If ... fingerprints can be subject[ed] to compelled disclosure by the grand jury without implicating the Fourth Amendment, it follows logically that the hair strands can as well." *Id.* The court noted, however, that what was sought in that case was only a "snip of hair." *Id.* at 140. "We need not decide whether the result might be different were the hair root requested, since the hair root, unlike the exposed hair, is a living structure. At times, constitutional distinctions are as thin as a razor's edge." *Id. See also United States v. Anderson*, 739 F.2d 1254 (4th Cir. 1984) (summarizing other cases); *In re Grand Jury Proceedings (Vickers)*, 38 F.Supp.2d 159, 165 (D.N.H. 1998) (citing the *Mills* decision and upholding a grand jury subpoena requiring the witness to provide "hair samples").[1]

Other cases have held that the warrantless combing, plucking, and clipping of hair by the police did not violate the Fourth Amendment. *See United States v. Weir*, 657 F.2d 1005, 1006-7 (8th Cir. 1981) ("[T]he agents proceeded to take samples of hair from Weir's head, beard, and mustache by combing and plucking the same… Because the intrusion upon Weir's person was so minor, even if it could be said that he did not consent to the search and seizure, [F]ourth [A]mendment rights were not implicated."); *United States v. D'Amico*, 408 F.2d 331, 333 (2d Cir. 1969) ("[T]he clipping by the officer of the few strands of hair from appellant's head was so

---

[1] *But see United States v. Bullock*, 71 F.3d 171, 176 fn. 3 (5th Cir. 1995) (acknowledging that courts are divided on whether question of hair collection rises to Fourth Amendment search and seizure).  Notably, *Bullock* cites to both the *Anderson* decision, *supra*, and *United States v. DeParias*, 805 F.2d 1447, 1456-7 (11th Cir. 1986).  Of consequence, however, the *DeParias* decision did not reach the question of whether the Fourth Amendment applied to the collection of hair samples, as the government had provided adequate probable cause in its post-indictment motion to support the request.  *Id.*, at 1456-7.

minor an imposition that appellant suffered no true humiliation or affront to his dignity. We hold

that a search warrant was not required to justify the officer's act.").[2]

Thus, unlike in *Schmerber*, the collection of hair samples is more akin to a fingerprint,

palmprint, or voice exemplar, as the non-invasive collection of such evidence does not implicate

any bodily intrusion whatsoever and merely mimics those characteristics and attributes already

on display to the public at large.  Even if the Fourth Amendment were found to apply to the

collection of hair samples, though, this motion has adequately set forth a factual basis for the

recovery of such evidence from the Defendant.

## <u>CONCLUSION</u>

Collection of hair samples from the Defendant is necessary to advance a comparison with

trace evidence of hairs found within a coffee canister and vial containing ricin; such evidence

would serve to prove, in part, the government's charges that the Defendant possessed the

biological toxin ricin and made false statements regarding the substance to FBI agents.  The

procedures the government intends to employ to collect hair samples from the Defendant are

equally commonplace and far less invasive than those addressed by the Court in *Schmerber*. The

collection of a hair sample is a quick, safe, routine and minimally invasive procedure.  The

procedure is not surgical in nature and does not pose any threat to Defendant's "dignitary

interests in personal privacy and bodily integrity." *Id*. at 761.  Due to the nature of the evidence

sought, the Fourth Amendment does not apply to the proposed collection in this case, but even if

---

[2] One District Court has held that a "showing of a reasonable suspicion must be made to a neutral judicial officer—either a magistrate or judge—before the [hair] sample is taken. The Court is not authorizing stop-and-comb detentions." *United States v. Ingram*, 797 F.Supp. 705, 717 (E.D. Ark. 1992).

it did, the government has made a substantial showing of factual support for the collection of hair samples from the Defendant.

Wherefore, the government's motion for court-ordered hair samples should be granted in full.

Respectfully submitted,

STEVEN M. DETTELBACH
United States Attorney

By:     /s/Justin E. Herdman
        Justin E. Herdman
        Assistant U.S. Attorney
        Reg. No. 0080418
        801 West Superior Avenue
        Cleveland, Ohio  44113
        Tel. No.:  (216) 622-3965
        Fax No.:  (216) 685-2378
        E-mail:   justin.herdman@usdoj.gov

By:     /s/Thomas E. Getz
        Thomas E. Getz
        Assistant U.S. Attorney
        Reg. No. 0039786
        801 West Superior Avenue
        Cleveland, Ohio  44113
        Tel. No.:  (216) 622-3840
        Fax No.:  (216) 685-2378
        E-mail:   thomas.getz@usdoj.gov

## CERTIFICATE OF SERVICE

This is to certify that on this 27th day of May 2011, a copy of the foregoing *Government's Motion for Court-Ordered Hair Samples* was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

/s/ Justin E. Herdman
Justin E. Herdman
Assistant U. S. Attorney
