IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 5:11 CR 52 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Jeff Boyd Levenderis, | |
| Defendant. | |

Defendant Jeff Boyd Levenderis ("Levenderis") objects (Doc. 130) to the Report and Recommendation ("R&R") (Doc. 121) of Magistrate Judge White denying his partial Motion to Reconsider (Doc. 61).  The Government filed a Response (Doc. 131).

Almost two-and-a-half years ago, Levenderis moved to suppress statements and evidence obtained by the Government in the course of investigating this matter (Doc. 35).  In March 2012, and without a hearing, Judge Wells denied Levenderis' Motion to Suppress (Doc. 57).  In May 2012, Levenderis moved to reconsider Judge Wells' March 2012 Order, challenging only the finding that the "uncontested evidence indicates that Mr. Levenderis was not arrested nor was his freedom of movement restrained at any point during the [January 24, 2011] questioning at the rehabilitation center," such that Levenderis was not in custody for purposes of *Miranda v. Arizona*, 384 U.S. 436 (1966)  (Doc. 61 at 2).

Magistrate Judge White held an evidentiary hearing on the *Miranda* issue (Doc. 127).  The Government offered the testimony of two of the three FBI agents who questioned Levenderis back in January 2011 -- no agent advised Levenderis of his *Miranda* rights  (*id*. at 20, 68).  Based on that

evidence, the Magistrate Judge concluded "a reasonable person in Defendant's position would have felt free to terminate the January 24, 2011 interview and, therefore, Defendant was not 'in custody' for *Miranda* purposes at that time" (Doc. 121 at 4).

The R&R accurately recites the facts relevant to the partial Motion to Reconsider. This Court adopts that factual recitation (Doc. 121 at 3–4). Levenderis challenges the R&R's custody finding on three grounds.

First, Levenderis argues "[i]t is significant and concerning . . . that the agents could not remember either how they first addressed Mr. Levenderis when finding him or how they entered his room" (Doc. 130 at 7). If, for example, Levenderis had entered his room "in an attempt to get away from the agents and the agents then followed him into his room," Levenderis might have been "in custody" for *Miranda* purposes. Levenderis argues the "circumstances upon which the agents and Mr. Levenderis entered his nursing home room remain[] unclear and ambiguous" (*id*. at 7–8).

Second, Levenderis stresses that questioning occurred in a "fairly small room" while Levenderis was "flanked" and then "surrounded" by federal agents and while the door to Levenderis's room may (or may not) have been closed (*id*. at 8) -- Agent Havrilla's testimony on this last point is unclear (Doc. 127 at 12), and neither party asked Agent McKimey whether the door to Levenderis's room was open or closed during the interview.

Third, Levenderis notes he was "receiving medical treatment for both physical and mental health issues" during his nursing home stay. He dismisses testimony that he was lucid and responsive throughout the interview as "merely [the agents'] judgment call" (Doc. 130 at 8).

Considering the totality of the circumstances, *see United States v. Crossley*, 224 F.3d 847, 861 (6th Cir. 2000), this Court concludes Levenderis was not "in custody" for *Miranda* purposes. Because

2

the FBI agents questioned Levenderis in a healthcare facility where he resided, he would have been in custody for *Miranda* purposes if a reasonable person in his position would not feel "at liberty to terminate the interrogation and cause the [agents] to leave." *United States v. Infante*, 701 F.3d 386, 396 (1st Cir. 2012) (internal quotation marks omitted). "In resolving this question, [this Court] focus[es] on the restraint imposed by the government agents, because the sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion." *United States v. New*, 491 F.3d 369, 373 (8th Cir. 2007) (internal citation, quotation marks, and alterations omitted). *See also United States v. Martin*, 781 F.2d 671, 673 (9th Cir. 1985) ("If the police took a criminal suspect to the hospital from the scene of a crime, monitored the patient's stay, stationed themselves outside the door, arranged an extended treatment schedule with the doctors, or some combination of these, law enforcement restraint amounting to custody could result."). Other factors are relevant to this Court's totality-of-the-circumstances analysis. *See Crossley*, 224 F.3d at 861.

The testimony shows Levenderis was not "ordered" or otherwise coerced to enter his room to be questioned. Rather, as Agent McKimey testified, "when we came up to [Levenderis'] room, he was just in the vicinity of the doorway or just outside of his room. We identified ourselves as FBI agents and asked if we could speak with him" (Doc. 127 at 46). Agent McKimey further testified that the agents' request to speak with Levenderis "wasn't forceful at all" (*id*. at 47).

Further, the evidence shows: no agent brandished a firearm or handcuffs at any point during the encounter (*id*. at 21, 49–50); no agent told Levenderis he was not free to leave the room or otherwise end questioning (though no agent told Levenderis he could leave the room or otherwise end questioning) (*id.* at 14–15, 50); Levenderis was allowed to speak by phone with a friend who called Levenderis during the interview (*id*. at 17, 54); the interview lasted roughly thirty minutes (*id*. at 54);

3

Levenderis responded to agent questioning with no apparent physical or mental impairment (*id*. at 13, 51–52); and Levenderis was healthy enough to walk about the facility, and to dress and clean himself (*id*. at 46). Nor did the Government have a role in placing Levenderis in the nursing home or in keeping him there. At the time of the interview, Levenderis was receiving treatment for health issues unrelated to the criminal conduct alleged in this case (*see id*. at 35–36) (agent testimony explaining Levenderis was under medical care because of "declining health due to [thyroid] difficulties and not taking in enough calories").

The setting for the interview is relevant to the *Miranda* custody inquiry, but this Court does not find that setting coercive. While Levenderis' quarters were tight, and the three agents sat close to Levenderis as he partially reclined in his bed, the interview took place in a setting that was relatively familiar to Levenderis -- his home for two months (*id.* at 36) -- not (for example) at a station house. *See United States v. Panak*, 552 F.3d 462, 466 (6th Cir. 2009) ("[A]ll individuals, the meek and the brazen alike, generally will find it easier to exercise such control on their home turf than at the station house.").

Finally, the fact that Levenderis was receiving medication at the time of the interview does not transform the interview into custodial interrogation. Levenderis and the agents discussed Levenderis' mental health, including that Levenderis had a family history of schizophrenia. But Levenderis denied having been diagnosed schizophrenic (Doc. 127 at 34–35). The agents also learned Levenderis took Celexa for depression (*id*. at 35), and "Zomplain" (*id*. at 37). Three days later, on a return visit, the agents learned Levenderis received six different medications, including Xanax (*id*. at 38–39). The agents did not ask Levenderis or nursing home staff the dosage or any side effects of

4

these drugs (*id*. at 38). Still, the uncontradicted testimony of two agents shows Levenderis was lucid during the interview.

Moreover, as Magistrate Judge White notes (Doc. 121 at 4–5 & 5 n.1), three days later, when the agents learned the names of the six drugs Levenderis was taking, Levenderis showed that, despite this medication, he had the ability to terminate agent questioning by doing exactly that -- Agent Havrilla testified that on this return trip "[w]e went to speak with Mr. Levenderis again in his room. At the time, I believe he made some phone calls . . . . [H]e got done with the phone calls; at which time, he made some statement to the effect that maybe he should have his attorney present, and we never truly got into an interview situation. We just walked out of the room at that point." (Doc. 127 at 40).

Because a reasonable person in Levenderis' position would have felt free to terminate questioning, the agents had no need to seek waiver of *Miranda* rights that had not yet attached (Doc. 130 at 9). *See also United States v. Warner*, 971 F.2d 1189, 1201 (6th Cir. 1992).

## CONCLUSION

Levenderis's Objection is overruled (Doc. 130). This Court adopts the R&R (Doc. 121). The Motion to Reconsider (Doc. 61) is denied.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

April 22, 2014